### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

ORLY TAITZ,                              :

      *Plaintiff,*                       :

      v.                               :    **Civil No. ELH-13-1878**

CAROLYN COLVIN,                          :

      *Defendant.*                      :
                          :

...o0o...

### MEMORANDUM IN SUPORT OF
### DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED
### <u>COMPLAINT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>

The defendant has moved to dismiss the Second Amended Complaint or, in the alternative, for summary judgment.  For the reasons that follow, the motion should be granted.

## INTRODUCTION

In this action, brought pro se, Dr. Orly Taitz ("Plaintiff") sued on behalf of herself under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for information contained in Social Security records, including information relating to individuals' Social-Security numbers and benefits.  Specifically, Plaintiff sought SSA records about three individuals and their dependents and/or family members.

SSA performed a search for responsive records that identified the majority of the requested information.  However, SSA could not locate responsive records concerning Plaintiff's request for records of Harrison (Harry) J. Bounel.  SSA

responded to Plaintiff's FOIA request on July 29, 2013, and mailed a supplemental response about the fees charged for the requested records on August 7, 2013.

Plaintiff's Second Amended Complaint alleges that SSA did not conduct a proper search for Mr. Bounel's records.  However, SSA has conducted a reasonable and adequate search for Mr. Bounel's records, as documented by the supporting declarations of Dawn S. Wiggins.  Because SSA has conducted an adequate search for records, Plaintiff's FOIA request is moot and dismissal or, in the alternative, summary judgment should be granted in Defendant's favor.

## STATEMENT OF FACTS

Plaintiff submitted a FOIA request, dated April 26, 2013, to SSA seeking the Social Security number (SSN) application (Form SS-5)[1] for three individuals, including Harrison (Harry) J. Bounel, and documentation on any Social Security benefits received by these individuals and their families and/or dependents.  *See* Letter dated April 26, 2013 from Plaintiff to SSA ("FOIA Request"), attached as Exhibit A.  Specifically, Plaintiff requested the following records about Mr. Bounel and his dependents:

> "[The] SS-5 application and any and all documentation for Harrison (Harry) J. Bounel, immigrant from Russia, born in 1890, arrived in the

---

[1] The Form SS-5 is the form through which an individual applies for an original or replacement social security card.  *See, e.g.,* http://www.socialsecurity.gov/online/ss-5.html.  The Form SS-5 includes the individual's full name, Social Security number (SSN), place of birth, date of birth, citizenship, parents' names, parents' SSNs (in certain versions of the Form SS-5), and other identifying information.

U.S. in and around 1912, received Social Security number in the state of [Connecticut] in and around March 28, 1977, SSN [XXX-XX-XXXX[2], and] any and all documentation on any Social Security benefits received by Mr. Bounel for himself and any and all known depend[e]nts."

*Id* at ¶ 1-3.  The SSA office responsible for responding to FOIA requests received Plaintiff's request on May 31, 2013.  *See* August 12, 2013 Declaration of Dawn S. Wiggins, Division Director of the Office of Privacy and Disclosure ("August 2013 Wiggins Declaration") ¶ 5, attached as Exhibit C.

On June 25, 2013, Plaintiff filed an action in this Court, alleging SSA violated the FOIA by failing to respond to Plaintiff's FOIA request within the required statutory period and asking the Court to order SSA to produce the requested documents, specifically the Form SS-5 for Mr. Bounel.  (ECF 1.)

SSA conducted a search of its records for the Form SS-5 for Mr. Bounel. Specifically, SSA searched its Privacy Act system of record entitled the Master File for Social Security Number Holders and SSN Applications (also known as the "Numident"), System of Record Notice No. 60-0058 (published at 75 F.R. 82121 (Dec. 29, 2010)), which includes records of each person who applied for a SSN.[3]  *See*

---

[2] SSN redacted to protect the privacy of the Social Security number holder, if the SSN is valid.

[3] The Numident is a numerically ordered electronic database containing records of each person who has applied for an SSN.  The Numident became fully electronic in the 1980s (i.e., it includes older records that were submitted in hardcopy).  There is one Numident record for each SSN ever issued.  The Numident record houses the

August 2013 Wiggins Declaration ¶ 6; September 13, 2013 Supplemental

Declaration of Dawn S. Wiggins ("September 2013 Wiggins Suppl. Declaration") ¶ 4,

attached as Exhibit D; January 29, 2014 Second Supplemental Declaration of Dawn

S. Wiggins ("January 2014 Wiggins Suppl. Declaration") ¶ 3, attached as Exhibit E.

This was the only location or record that SSA identified as having a reasonable

likelihood of containing Mr. Bounel's Form SS-5.  *See* January 2014 Wiggins Suppl.

Declaration ¶ 3.

In order to locate an individual's Form SS-5 using the Numident database,

SSA must have information such as SSN, name, date of birth, or other identifying

information about the number holder that it can use to search the database.  *See*

August 2013 Wiggins Declaration ¶ 6; January 2014 Wiggins Suppl. Declaration ¶

5.  Because there is only one Numident record for each SSN issued by SSA, an SSN

search is the primary and most accurate means of locating individuals' records in

the Numident.  *See* January 2014 Wiggins Suppl. Declaration ¶ 5.

In response to Plainitff's FOIA request, SSA searched the Numident for the

SSN provided by Plaintiff, which she asserts belongs to Mr. Bounel.  *See* January

2014 Wiggins Suppl. Declaration ¶ 6.  SSA also conducted alternate searches of the

Numident using Mr. Bounel's name (the following variations were searched:

---

identifying information given by the applicant for an SSN and Form SS-5s.  *See*
January 2014 Wiggins Suppl. Declaration ¶ 4.

Harrison Bounel, Harrison J. Bounel, Harry Bounel, and Harry J. Bounel) and year of birth (i.e., 1890). *Id.* Because Plaintiff did not provide a full date of birth, SSA performed a date range search for any Numident records with dates of birth between January 1, 1890 and January 1, 1894. *Id.* SSA reviewed any results of the searches against the identifying information provided by Plaintiff for Mr. Bounel. *Id.* However, SSA was unable to locate a Form SS-5 or Numident record for Mr. Bounel based on the information provided by Plaintiff. *Id.*

The other identifying information about Mr. Bounel that Plaintiff provided with her FOIA request included that he emigrated from Russia, arrived in the United States around 1912, and received an SSN in Connecticut or around March 28, 1977. *See* January 2014 Wiggins Suppl. Declaration ¶ 5. However, SSA cannot conduct a search of the Numident by place of emigration, year of immigration, or the date the person received or applied for an SSN. *See* January 2014 Wiggins Suppl. Declaration ¶ 7.

Because SSA was unable to locate a record for Mr. Bounel in the Numident, SSA also could not locate benefit records for Mr. Bounel and his dependents, if any. SSA's beneficiary systems of records, the Master Beneficiary Record ("MBR"), System of Record Notice No. 60-0090 (published at 71 F.R. 1826 (Jan. 11, 2006),[4]

---

[4] The MBR contains the data needed to generate Social Security benefit payments under the Old-Age, Survivors, and Disability Insurance (OASDI) program. The MBR is indexed by SSN, and SSN is the primary identifier for each record or account.

and Supplemental Security Income Record and Special Veterans Benefits ("SSR"),

System of Record Notice No. 60-0103 (published at 71 F.R. 1830 (Jan. 11, 2006),[5]

require a valid SSN to complete a search.   There are no other locations or records

that the agency determined would have a reasonable likelihood of containing the

requested benefit records of Mr. Bounel.   *See* January 2014 Wiggins Suppl.

Declaration ¶ 8.

On July 29, 2013, SSA responded to Plaintiff's FOIA request.   *See* Letter

dated July 29, 2013 from SSA to Plaintiff ("FOIA Response"), attached as Exhibit B.

Defendant advised Plaintiff that, after completing a search of SSA records, SSA was

unable to find the requested information about Mr. Bounel.   *See* August 2013

Wiggins Declaration ¶ 6; FOIA Response ¶ 7.

On July 8, 2013, Plaintiff filed an amended complaint.   (ECF 3)

In August 2013, Defendant filed a Motion to Dismiss or, in the Alternative for

Summary Judgment, and on December 13, 2013 this Court granted Defendant's

Motion to Dismiss. (ECF 7, 19)

On January 3, 2014, Plaintiff filed a second amended complaint.   (ECF 20).

Plaintiff's second amended complainant alleges a violation of the FOIA only as it

---

[5] The SSR contains information on all persons who have ever applied for Title XVI
Supplemental Security Income (SSI) and persons who, prior to the implementation
of the federal SSI program in 1974, received state benefits and were converted to
the SSI program.   The SSR is indexed by SSN of the first eligible person on the
record or account, which is the primary identifier for each record or account.   SSNs
of secondary beneficiaries on the record or account serve as a secondary index.

relates to Plaintiff's request for records of Mr. Bounel.  Specifically, Plaintiff alleges that SSA did not provide evidence of an adequate search for Mr. Bounel's record and requests SSA produce the Form SS-5 for Mr. Bounel.

## STANDARD OF REVIEW

## I.    STANDARD FOR DISMISSAL

When reviewing a 12(b)(1) motion to dismiss, "the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor." *See Vanover v. Hantman*, 77 F.  Supp. 2d 91, 98 (D.D.C. 1999).  "The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001), *aff'd*, 346 F.3d 192 (D.C. Cir. 2003).  In addition, the plaintiff bears the burden of persuasion, and must establish subject-matter jurisdiction "by a preponderance of the evidence." *Simmington v. Gates*, No. DKC 08-3169, 2010 U.S. Dist. LEXIS 30749, at *15 (D. Md. Mar. 30, 2010); *Vanover*, 77 F. Supp.2d at 98.

To determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence. *Simmington*, 2010 U.S. Dist. LEXIS 30749, at *15; *Rann*, 154 F. Supp. at 64.  A court should grant dismissal if material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Simmington*, 2010 U.S. Dist. LEXIS 30749, at *15-16.  Defendant

moves for dismissal under Rule 12(b)(1), Plaintiff conducted a reasonable and adequate search in response to Plaintiff's FOIA request and provided all responsive and non-exempt records located by Defendant.  *See* FED. R. CIV. P. 12(b)(1).

## II.    STANDARD FOR SUMMARY JUDGMENT

A court shall grant summary judgment if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Courts typically decide FOIA cases on motions for summary judgment.  *Havemann v. Astrue*, No. ELH-10-1498, 2012 U.S. Dist. LEXIS 136292, at *13 (D. Md. Sept. 24, 2012), *aff'd*, No. 12-2453, 2013 U.S. App. LEXIS 15838 (4th Cir. Aug. 1, 2003); *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  To prevail on a motion for summary judgment in an FOIA case, an agency must demonstrate that the information that falls within the request has been produced, is unidentifiable, or is exempt from disclosure.  *Taitz v. Astrue*, 806 F .Supp. 2d 214, 217 (D.D.C. 2011) ), *aff'd*, No. 11-5304, 2012 U.S. App. LEXIS 10713 (D.C. Cir. May 25, 2013); *Goland v. C.I.A.*, 607 F.2d 339, 352 (D.C. Cir. 1978).

For motions for summary judgment, factual assertions in a moving party's affidavits or declarations are accepted as true unless the opposing party rebuts them with affidavits or documentary evidence.  *Davis v. F.B.I.*, 767 F. Supp. 2d  201, 204 (D.D.C. 2011).  In FOIA cases, courts can grant summary judgment based solely on the information an agency provides through employee affidavits or declarations

as long as the declarations are sufficiently detailed and provide the information necessary to render judgment. *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such agency affidavits or declarations are accorded a presumption of good faith, which a plaintiff cannot rebut with purely speculative claims. *Havemann*, 2012 U.S. Dist. LEXIS 136292, at *15; *Taitz*, 806 F. Supp. 2d at 217; *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Defendant moves for summary judgment because there is no genuine dispute as to any material fact and Defendant is entitled to judgment as a matter of law.

## ARGUMENT

I.  **THE CLAIMS IN WHICH PLAINTIFF CHALLENGES THE FAILURE TO RELEASE RECORDS RESPONSIVE TO HER FOIA REQUEST ARE MOOT BECAUSE DEFENDANT HAS CONDUCTED A REASONABLE SEARCH AND PROVIDED ALL NON-EXEMPT REQUESTED RECORDS LOCATED BY DEFENDENT.**

A claim for relief under FOIA becomes moot once an agency produces all the information a plaintiff requested. *Cornucopia Institute v. USDA*, 560 F.3d 673, 675 (7th Cir. 2009). Indeed, courts have found that "however fitful or delayed the release of information under FOIA may be... if we are convinced [agencies] have, however belatedly, released all nonexempt material, we have no further judicial function to perform under FOIA." *Tijerna v. Walters*, 821 F.2d 789, 799 (D.C. Cir. 1987) (*quoting Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982)). The release of the information sought by Plaintiff has made it "impossible for th[is] [C]ourt to grant

any effectual relief" to Plaintiff, and therefore, the case must be dismissed.  *See Cornucopia*, 560 F.3d at 676.

Under Article III, section 2 of the Constitution, federal courts only have jurisdiction to hear and decide actual "cases" or "controversies." *Allen v. Wright*, 468 U.S. 737, 750 (1984); *see National Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997).  This requirement prevents the issuance of advisory opinions, as it demands the existence of an actual dispute between adverse parties with a stake in the outcome.  *See Richardson v. Ramirez*, 418 U.S. 24, 36 (1974).  In fact, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases and controversies." *Simon v. Eastern  Kentucky Welfare Rights Org.*, 426 U.S. 26, 37 (1976) (*citing Flast v. Cohen*, 392 U.S. 83, 95 (1968)).

The case-or-controversy requirement must be met "through all stages of federal judicial proceedings." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990).  The effect of post- complaint changes in the facts or law on the continued existence of a particular controversy is assessed through the lens of mootness.  *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (*quoting United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).  Thus, the controversy must exist at the outset of the litigation and continue throughout the existence of the suit.  *See Columbian Rope Company v. West*, 142 F.3d 1313, 1316

10

(D.C. Cir. 1998) (citing *Arizonans for Official English*, 520 U.S. 43).  As the D.C.

Circuit has explained, "[e]ven where litigation poses a live controversy when filed,

the [mootness] doctrine requires a federal Court to refrain from deciding it if 'events

have so transpired that the decision will neither presently affect the parties' rights

nor have a more-than-speculative chance of affecting them in the future."

*Columbian Rope*, 142 F.3d at 1316 (*quoting Clarke v. United States*, 915 F.2d 699,

701 (D.C. Cir. 1990) (en banc)).  Once a case becomes moot, the court loses

jurisdiction.  *See City of Houston v. Dep't of Housing and Urban Dev.*, 24 F.3d 1421,

1426 (D.C. Cir. 1994).

In FOIA cases, an agency's release of documents eliminates any live

controversy between the parties because it gives the requester the relief sought in

the FOIA complaint.  *See Crooker v. United States State Dep't*, 628 F.2d 9, 10 (D.C.

Cir. 1980) ("Once the records are produced [in a FOIA case] the substance of the

controversy disappears and becomes moot since the disclosure which the suit seeks

has already been made.").  A court can properly dismiss such cases on mootness

grounds because there is no further judicial function for the court to perform.  *See*

*Tijerina*, 821 F.2d at 799; *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982);

*Trueblood v. Dep't of Treasury*, 943 F. Supp. 64, 67 (D.D.C. 1996).

After conducting a reasonable and adequate search, Defendant responded to

Plaintiff's FOIA request, providing all responsive records located by Defendant that

11

were not exempt from disclosure.  Thus, Defendant has satisfied Plaintiff's FOIA

request and her request is now moot.  Accordingly, the Court should grant dismissal

or, in the alternative, summary judgment in Defendant's favor on this basis.

## II.   SSA CONDUCTED A REASONABLE AND ADEQUATE SEARCH FOR RESPONSIVE RECORDS OF HARRISON (HARRY) J. BOUNEL.

SSA is entitled to summary judgment because it conducted a reasonable and

adequate search for responsive records of Harrison (Harry) J. Bounel, using the

information provided by Plaintiff in her April 26, 2013 FOIA request.  An agency's

summary judgment motion should be granted if the agency shows that it

"conduct[ed] a search reasonably calculated to uncover all relevant documents."

*Kowalczyk v. DOJ*, 73 F.3d 386, 388 (D.C. Cir. 1996) *(quoting Truitt v. Dep't of*

*State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see also Voinche v. FBI*, 425 F. Supp. 2d

134, 135 (D.D.C. 2006).  If the plaintiff challenges the nature and extent of an

agency's search for responsive documents, the agency "must demonstrate beyond

material doubt that the search was reasonable.'"  *Kowalczyk*, 73 F.3d at 388.

The fundamental question is not "whether there might exist any other

documents possibly responsive to the request, but rather whether the search for

those documents was adequate."  *Steinberg v. United States Dep't of Justice*, 23 F.3d

548, 551 (D.C. Cir. 1994) *(quoting Weisberg v. United States Dep't of Justice*, 745

F.2d 1476, 1485 (D.C. Cir. 1984)).  In other words, "the focus of the adequacy

inquiry is not on the results."  *Hornbostel v. United States Dep't of the Interior*, 305

F. Supp. 2d 21, 28 (D.D.C. 2003); *see also Meeropol v. Meese*, 790 F.2d 942, 952 (D.C. Cir. 1986) (search is not unreasonable simply because it fails to produce all relevant materials).  Further, the agency is "not obligated to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk*, 73 F.3d at 389 (holding that agency is not required to speculate about potential leads).

An agency may use reasonably detailed, non-conclusory affidavits to demonstrate that it conducted a reasonable search in accordance with the FOIA. *See Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D. C. Cir.1981); *see also Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).  Those affidavits "enjoy a presumption of good faith, which will withstand purely speculative claims about the existence and discoverability of other documents." *Ground Saucer Watch*, 692 F.3d at 771; *see also Havemann*, 2012 U.S. Dist. LEXIS 136292, at *15; *Chamberlain v. United States Dep't of Justice*, 957 F. Supp. 292, 294 (D.D.C. 1997) ("It is well established that '[a]gency affidavits enjoy a presumption of good faith that withstand[s] purely speculative claims about the existence and discoverability of other documents," (quoting *Albuquerque Publ'g Co. v. United States Dep't of Justice*, 726 F. Supp. 851, 860 (D.D.C. 1989)).  Therefore, unless Plaintiff can point to specific evidence sufficient to put the agency's good faith into doubt, summary judgment must be granted to the agency.  *Ground Saucer Watch*, 692 F.3d at 771.

13

As detailed in the August 2013 Declaration of Dawn S. Wiggins, Deputy
Executive Director of the Office of Privacy and Disclosure (attached as Exhibit C),
the September 2013 Supplemental Wiggins Declaration (attached as Exhibit D),
and the January 2014 Supplemental Wiggins Declaration (attached as Exhibit E),
SSA conducted an adequate search for the requested documents about Mr. Bounel.
Specifically, SSA searched its Privacy Act system of record entitled the Master File
for Social Security Number Holders and SSN Applications (also known as the
"Numident"), System of Record Notice No. 60-0058 (published at 75 F.R. 82121
(Dec. 29, 2010)), which includes records of each person who applied for a Social
Security number (SSN).  There are no other locations or records that the agency
determined would have a reasonable likelihood of containing a Form SS-5 of Mr.
Bounel.  *See* January 2014 Wiggins Suppl. Declaration ¶ 3.

In order to locate an individual's Form SS-5 using the Numident database,
SSA must have information such as SSN, name, date of birth, or other identifying
information about the number holder that it can use to search the database.  *See*
August 2013 Wiggins Declaration ¶ 6; January 2014 Wiggins Suppl. Declaration ¶
5.  Because there is only one Numident record for each SSN issued by SSA, an SSN
search is the primary and most accurate means locating individual records in the
Numident.  *See* January 2014 Wiggins Suppl. Declaration ¶ 5.

14

In response to Plaintiff's April 26, 2013 FOIA request, SSA searched the

Numident for the SSN provided by Plaintiff, which she asserts belongs to Mr.

Bounel.[6]  *See* January 2014 Wiggins Suppl. Declaration ¶ 6.  SSA also conducted

alternate searches of the Numident using Mr. Bounel's name (the following

variations were searched: Harrison Bounel, Harrison J. Bounel, Harry Bounel, and

Harry J. Bounel) and year of birth (i.e., 1890).  *Id.*  Because Plaintiff did not provide

a full date of birth, SSA performed a date range search for any Numident records

with dates of birth between January 1, 1890 and January 1, 1894.  *Id.*  SSA

reviewed any results of the searches against the identifying information provided by

Plaintiff for Mr. Bounel.  *Id.*  However, SSA was unable to locate a Form SS-5 or

Numident record for Mr. Bounel based on the information provided by Plaintiff in

her FOIA request.  *Id.*  The other identifying information about Mr. Bounel

provided by Plaintiff with her FOIA request included that he emigrated from

---

[6] SSA has previously advised Plaintiff that SSA cannot disclose information about
the SSN she asserts belongs to Mr. Bounel because the individual holding the SSN
is living.  *See* September 2013 Wiggins Suppl. Declaration ¶ 7.  Plaintiff has made
multiple FOIA requests to SSA and initiated previous lawsuits for information
about the SSN she asserts belongs to Mr. Bounel.  *See Taitz v. Astrue*, 806
F.Supp.2d 214, 217 (D.D.C. 2011), *aff'd*, No. 11-5304, 2012 U.S. App. LEXIS 10713
(D.C. Cir. May 25, 2013) (SSA properly withheld a Form SS-5 under FOIA
Exemption 6 because disclosure of the form, which the requestor contended was for
a number being fraudulently used by President Barack Obama, would implicate a
substantial privacy interest while serving no public interest cognizable under
FOIA.); *Taitz v. Obama*, 707 F.Supp.2d 1 (D.D.C. 2010), *recons. denied*, 754
F.Supp.2d 57 (D.D.C. 2010).  SSA has consistently withheld information about this
SSN under FOIA exemption 6, and the United States District Court for the District
of Columbia has upheld such withholding.  *Id.*

15

Russia, arrived in the United States around 1912, and received an SSN in

Connecticut or around March 28, 1977.  *See* September 2013 Wiggins Suppl.

Declaration ¶ 5.  However, SSA cannot conduct a search of the Numident by place of

emigration, year of immigration, or the date the person received or applied for an

SSN.  *See* January 2014 Wiggins Suppl. Declaration ¶ 7.

Because SSA was unable to locate Mr. Bounel in the Numident, SSA also

could not locate benefits records for Mr. Bounel.  SSA's beneficiary systems of

records, the Master Beneficiary Record ("MBR"), System of Record Notice No. 60-

0090 (published at 71 F.R. 1826 (Jan. 11, 2006), and Supplemental Security Income

Record and Special Veterans Benefits ("SSR"), System of Record Notice No. 60-0103

(published at 71 F.R. 1830 (Jan. 11, 2006), require a valid SSN to complete a search.

There are no other locations or records that the agency determined would have a

reasonable likelihood of containing the requested benefit records of Mr. Bounel.  *See*

January 2014 Wiggins Suppl. Declaration ¶ 8.

SSA searched all records and locations that the agency determined would

have a reasonable likelihood of containing the Social Security records of Mr. Bounel,

performed alternate searches of its records using the information in Plaintiff's FOIA

request, and further reviewed any possibly responsive records before responding to

Plaintiff's FOIA request.  SSA's failure to locate Mr. Bounel's records, if any exist,

does not render SSA's search inadequate or unreasonable.  "[I]t is long settled that

the failure of an agency to turn up one specific document in its search does not alone

render a search inadequate." *Iturralde v. Comptroller of the Currency*, 315 F.3d
311, 315 (D.C. Cir. 2003).  Because SSA conducted an adequate search for
responsive documents, it is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court
dismiss the above-captioned caption, or, in the alternative, grant summary
judgment in Defendant's favor.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By:_____/s/_____
          Allen F. Loucks
          Assistant United States Attorney
          36 South Charles Street
          Fourth Floor
          Baltimore, Maryland 21201
          (410) 209-4800