IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ORLY TAITZ,

    *Plaintiff*,

    v.

CAROLYN COLVIN, Commissioner,
Social Security Administration,

    *Defendant*.

Civil Action No. ELH-13-1878

**MEMORANDUM OPINION**

In this case, I must determine whether the Social Security Administration ("SSA") complied with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, when it responded to a FOIA request submitted by Dr. Orly Taitz, plaintiff.  In her FOIA request, plaintiff asked for the Social Security application ("SS-5") filed by an individual named Harry Bounel, who allegedly was born in 1890.  Plaintiff submitted the FOIA request to confirm her belief that President Barack Obama is fraudulently using Mr. Bounel's Social Security number ("SSN") as his own. *See* Second Amended Complaint ("SAC," ECF 20) at 8–16.  SSA responded to plaintiff's request by notifying her that it was unable to locate any records for Mr. Bounel.

Plaintiff has filed suit against the Commissioner of the SSA, Carolyn Colvin, alleging that SSA is "defrauding this honorable court in claiming that [it has] no records for Harry Bounel." SAC at 3.  She seeks, *inter alia*, an order requiring SSA to release Mr. Bounel's SS-5.

Presently before the Court is defendant's "Motion to Dismiss the Second Amended Complaint or, in the Alternative, for Summary Judgment" ("Motion," ECF 28), which was accompanied by a Memorandum of Law ("Memo," ECF 28-1), and exhibits.  Plaintiff filed a

Response in Opposition and Cross-Motion for Summary Judgment (collectively, "Opp." or "Opposition," ECF 31), also with exhibits.  Defendant filed a Reply in support of her Motion and an opposition to plaintiff's cross-motion ("Def. Reply," ECF 32), with exhibits, and plaintiff filed a Reply in support of her cross-motion ("Pl. Reply," ECF 35), also with exhibits.[1]  No hearing is necessary is resolve the motions.  *See* Local Rule 105.6.  For the reasons that follow, I will grant summary judgment to defendant.

**Factual Summary**

On April 26, 2013, plaintiff sent a FOIA request to the SSA office in Baltimore, requesting a copy of the SS-5s for three individuals: Mr. Tamerlan Tsarnaev, Mr. Harrison (Harry) J. Bounel, and Ms. Stanley Ann Dunham.  *See* April 26 Letter, ECF 7-2 at ¶¶ 1–3.  She also requested "any and all documentation pertaining to any and all payments or aid provided by the Social Security administration" to each of these individuals.  *Id.*  In the letter, plaintiff stated that Mr. Bounel was an "immigrant from Russia, born in 1890, arrived in the U.S. in and around 1912, received Social Security number in the state of CT in and around March 28, 1977, SSN xxx-xx-4425."[2] *Id.* ¶ 2.  The letter provided similar types of information regarding the other two individuals.  *Id.* ¶¶ 1, 3.

---

[1] Plaintiff has also filed a "Motion/Request for the Defense to Prepare Vaugn [sic] Index."  ECF 14.  For the reasons discussed, *infra*, that motion will be denied as moot.

[2] The SSN that plaintiff alleges belongs to Mr. Bounel is the same SSN that plaintiff alleges is being used by President Obama.  The SSN was listed in full in plaintiff's letter, and plaintiff did not redact the SSN when she submitted the letter as an exhibit, in violation of the Privacy Policy for this District Court.  *See* "Privacy Policy – Civil Cases," available at http://www.mdd.uscourts.gov/Misc/privacypolicyprocedures.pdf.  The Privacy Policy states:

SSA had not responded to plaintiff's letter when, on June 25, 2013, plaintiff filed suit in this Court requesting, *inter alia*, an order compelling SSA to produce Mr. Bounel's SS-5. ECF 1 at 3.  On July 8, 2013, plaintiff filed an Amended Complaint (ECF 3), which was substantively identical to the original complaint.  In her suit, plaintiff alleged that Mr. Bounel was born in 1890, and therefore, under the "'120 Year Rule' implemented by the SSA in 2010," pertaining to "'extremely aged individuals,'" Bounel's "Social Security applications have to be released under FOIA without proof of [his] death . . . ."  *Id.* ¶ 12.

Dawn S. Wiggins, a Freedom of Information Officer for the SSA, replied to plaintiff's letter on July 29, 2013.  *See* July 29 Letter, ECF 7-3.  Wiggins stated, *id.* at 2–3:

> I have enclosed a copy of the SS-5s for Mr. Tsarnaev and Ms. Dunham. We cannot disclose the parents' names listed on Mr. Tsarnaev's application without their written consent or acceptable proof of their death.  The Privacy Act of 1974 (5 U.S.C. § 552a) provides the guidelines and limitations for disclosing the information you have requested.  The information requested is also exempt from disclosure under the FOIA (5 U.S.C. § 552(b)(6)).  Exemption 6 of the FOIA does not require agencies to disclose information that would be a clearly unwarranted invasion of personal privacy. . . .

> In response to your request for any and all Social Security benefits received by Mr. Tsarnaev and Ms. Dunham or their dependents, neither Mr. Tsarnaev nor Ms. Dunham had received any Social Security benefits.

> We were unable to find any information for Mr. Bounel based on the information you provided to us.  Mr. Bounel may not have applied for a Social Security number (SSN) or may have given different information on the application for a number.

---

"Social Security numbers . . . are personal identifiers which unless otherwise ordered by the court should not appear in public court documents."  *Id.* ¶ 1.  Where, as here, the Social Security number is relevant to the case, the number may be partially redacted "so that only the last four digits appear."  *Id.* ¶ 2b.  Consistent with the Privacy Policy, the SSN has been redacted for the purpose of this Memorandum Opinion.

On August 14, 2013, defendant filed a Motion to Dismiss or, in the Alternative, for Summary Judgment.  ECF 7.  Defendant argued that plaintiff's lawsuit had been rendered moot by SSA's response to plaintiff's FOIA request.  *See* ECF 7-1.  In her opposition to that motion, plaintiff did not address the mootness argument; instead, plaintiff argued that Wiggins's response to the FOIA request was inadequate.  ECF 9.  By Memorandum Opinion (ECF 18) and Order (ECF 19) of December 13, 2013, I granted defendant's motion to dismiss, noting, ECF 18 at 5: "If plaintiff takes issue with the adequacy of the SSA's response, she must amend her complaint to add allegations that the SSA's response was deficient."

Thereafter, plaintiff filed a Second Amended Complaint ("SAC") on January 3, 2014, along with 23 exhibits.  ECF 20.  The SAC alleges that SSA "did not provide any evidence of [an] adequate search for documents" and that SSA improperly searched the Numident[3] instead of the agency's paper records.  *See id.* at 6–7.  In addition, plaintiff alleges that she submitted a new FOIA request on August 8, 2013, regarding Mr. Bounel's SS-5, but that defendant has yet to provide any response, in violation of the FOIA.  *Id.* at 7.  And, plaintiff added a request for an order requiring SSA to prepare a *Vaughn* index, which is an annotated list of documents that an agency has withheld or redacted.  *See generally Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 357 n.6 (4th Cir. 2009).

---

[3] Defendant explains:  "The Numident is a numerically ordered electronic database containing records of each person who has applied for a social security number ('SSN').  The Numident became fully electronic in the 1980s (i.e., it includes older records that were submitted in hardcopy).  There is one Numident record for each SSN ever issued."  ECF 28-1 at 3 n.3.

Yet, the SAC strays far beyond the original two complaints; it contains new allegations and requests additional forms of relief.  In particular, plaintiff asks the court, pursuant to 18 U.S.C. § 3332(a), to allow plaintiff to present to a special grand jury evidence that President Obama has committed multiple criminal acts, including treason and various forms of fraud.  *Id.* at 7–19.  The SAC also includes a "request under 28 USC 1002 for examination of the original (wet ink) SS-5 of Harry Bounel in light of evidence of forgery and fraud in other IDs."  *Id.* at 19.

Additional facts will be included in the Discussion.

## Standard of Review

As noted, defendant's Motion was styled in the alternative as either a motion to dismiss or a motion for summary judgment.  In support of the motion for dismissal, defendant notes: "A claim for relief under FOIA becomes moot once an agency produces all the information a plaintiff requested."  Memo at 9.  Although this legal proposition is true, the very issue in this case is whether SSA in fact produced all the information plaintiff requested.  Accordingly, the case is not moot and the motion to dismiss will be denied.

As indicated, the parties filed cross-motions for summary judgment.  Therefore, my analysis will proceed under the summary judgment standard.  Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  It provides, in part:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).  A fact is "material" if it "might affect the

outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In resolving a motion for summary judgment, a district court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Greater Baltimore Ctr. For Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts'" showing that there is a triable issue. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see also Celotex Corp.*, 477 U.S. at 322–24.

The district court's "function" in resolving a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Notably, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. In other words, "[f]actual disputes that are irrelevant . . . will not be counted." *Id.* at 248.

If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248. In contrast, a

court must award summary judgment if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252.  However, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*  And, the court should "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

When, as here, the parties have filed cross-motions for summary judgment, the court must consider "each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir.) (citation omitted), *cert. denied,* 540 U.S. 822 (2003).  "Both motions must be denied if the court finds that there is a genuine issue of material fact.  But if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment."  10A Wright, Miller & Kane, Federal Practice & Procedure § 2720, at 336–37 (3d ed. 1998, 2012 Supp.).

## Discussion

### 1.

"The Freedom of Information Act was enacted to facilitate public access to Government documents," *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (citation omitted), and to vindicate the public's right to know "what their government is up to." *U.S. Dep't of Justice v Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989) (quotation marks omitted);

*see also Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, ___ F. 3d. ___, Civ. No. 12-5223, 2014 WL 1284811, at *1–2 (D.C. Cir. Apr. 1, 2014); *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 193 (2d Cir. 2012); *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 694 (9th Cir. 2012).  Consistent with this objective, FOIA requires that "each [federal] agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any) and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

An agency responding to a FOIA request must conduct a search "'reasonably calculated to uncover all relevant documents'" and, if challenged, must demonstrate "'beyond material doubt'" that the search was reasonable.  *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010) (quoting *Weisberg v. U.S. Dep't of Justice,* 705 F.2d 1344, 1351 (D.C. Cir. 1983)).  "The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate."  *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982); *accord Moffat v. U.S. Dep't of Justice*, 716 F.3d 244, 254 (1st Cir. 2013) *cert. denied*, 134 S. Ct. 950 (2014); *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 987 (9th Cir. 2009); *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 182 (3d Cir. 2007).

Notably, "[t]he burden is on the government to demonstrate that it has thoroughly searched for the requested documents where they might reasonably be found."  *Krikorian v. Department of State*, 984 F.2d 461, 468 (D.C. Cir. 1993); *accord Moffat*, 716 F.3d at 254. However, the agency is not obligated to look beyond the four corners of the request or otherwise

speculate about potential leads; rather, "[t]he adequacy of an agency's search is measured by a standard of reasonableness." *McGehee v. CIA*, 697 F.2d 1095, 1100–01 (D.C. Cir. 1983); *see Morley v. C.I.A.*, 508 F.3d 1108, 1114 (D.C. Cir. 2007); *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996).

The government may rely upon affidavits to show it has conducted a reasonable search, as long as the affidavits are "'relatively detailed and nonconclusory and . . . submitted in good faith.'" *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1979) (quoting *Vaughn v. Rosen,* 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974)); *accord Karantsalis v. U.S. Dep't of Justice*, 635 F.3d 497, 500 (11th Cir. 2011); *Elliott*, 596 F.3d at 852; *Lane v. Dep't of Interior*, 523 F.3d 1128, 1135 (9th Cir. 2008). The affidavit "must be reasonably detailed, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched so as to give the requesting party an opportunity to challenge the adequacy of the search. *Ethyl Corp. v. E.P.A.*, 25 F.3d 1241, 1246–47 (4th Cir. 1994) (internal quotation marks and citations omitted); *accord Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 69 (2d Cir. 2009); *Lahr*, 569 F.3d at 986.

For example, the U.S. District Court for District of Columbia found a search by officials at the Shenandoah National Park ("SNP") to be reasonable when defendants submitted an affidavit that advised the court as follows:

> SNP employees searched agency records, both manually and by automated means. Specifically, defendant notified relevant employees of the requests through e-mail, discretionarily reopened plaintiff's first FOIA request though it had technically been closed, in order to sort out some perceived confusion, and

> requested that the [] project manager review his files in order to identify any documents covered by the requests.  Both hard copy files and e-mails retrieved from the search were further reviewed by the SNP employees responsible for FOIA matters at SNP.

*Hornbostel v. U.S. Dep't of Interior*, 305 F. Supp. 2d 21, 26 (D.D.C. 2003) (internal quotation marks omitted), *aff'd*, No. 03-5257, 2004 WL 1900562 (D.C. Cir. Aug. 25, 2004).

By contrast, the D.C. Circuit found an affidavit submitted by an FBI Special Agent inadequate when it merely stated, *Weisberg*, 627 F.2d at 370: "I have conducted a review of FBI files which would contain information that Mr. Weisberg has requested. . . . The FBI files to the best of my knowledge do not include any information requested by Mr. Weisberg other than the information made available to him."  The court explained, *id.*: "[T]he affidavit gives no detail as to the scope of the examination and thus is insufficient as a matter of law to establish its completeness."

If the agency shows that its search was reasonable, "the burden shifts to the requester to show that the search was not in fact in good faith" or that the agency is otherwise acting in bad faith (*e.g.* by denying the existence of documents it in fact possesses).  *Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 13 (D.D.C. 1998); *see Moffatt*, 716 F.3d at 254; *CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 341 (6th Cir. 2011); *Lee v. U.S. Attorney for S. Dist. of Fla.*, 289 F. App'x 377, 380 (11th Cir. 2008).  "If the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."  *Truitt*, 897 F.2d at 542.

Even if the agency uncovers responsive documents, its disclosure obligations are not unlimited.  "While the FOIA generally authorizes disclosure of information contained in public records, it also expressly recognizes that the public interest is not always served by disclosure." *U.S. Dep't of Health & Human Servs. v. Fed. Labor Relations Auth.*, 833 F.2d 1129, 1134 (4th Cir. 1987); *accord Am. Mgmt. Servs., LLC v. Dep't of the Army*, 703 F.3d 724, 728 (4th Cir. 2013) *cert. denied*, ____ U.S. ____, 134 S. Ct. 62 (2013).  Thus, an agency may withhold information where a record falls within one of FOIA's nine specific statutory exemptions.  *See* 5 U.S.C. § 552(b) (listing exemptions); *U.S. Dep't of Defense v. Fed. Labor Relations Auth.,* 510 U.S. 487, 494 (1994) (noting that FOIA incorporates "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language" (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360–61 (1976))); *Am. Mgmt. Servs., LLC*, 703 F.3d at 728–29; *Hanson v. U.S. Agency for Intern. Dev.*, 372 F.3d 286, 290 (4th Cir. 2004) (explaining that nine FOIA exemptions "are designed to safeguard various public interests against the harms that would arise from overbroad disclosure").

Of relevance here, 5 U.S.C. § 552(b)(6), also known as FOIA Exemption 6, provides that agencies are not required to disclose "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  *See Havemann v. Colvin*, 537 F. App'x 142, 146 (4th Cir. 2013).  Exemption 6 permits a federal agency to withhold records where (i) the disputed records constitute "personnel," "medical," or "similar files," (ii) the disclosure of which would amount to a "clearly unwarranted invasion of personal

privacy." 5 U.S.C. § 552(b)(6).  SSNs are exempt from disclosure under Exemption 6.  *See Smith v. Dept. of Labor*, 798 F. Supp. 2d 274, 283–84 (D.D.C. July 26, 2011); *Prison Legal News v. Lappin*, 780 F .Supp. 2d 29, 39–41, (D.D.C. 2011); *Taitz v. Obama*, 754 F. Supp. 2d 57, 60 (D.D.C. 2010); *Coleman v. Lappin*, 680 F. Supp. 2d 192, 197 (D.D.C. 2010).  The purpose of this exemption is "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."  *Core v. U.S. Postal Serv.*, 730 F.2d 946, 947 (4th Cir. 1984) (citing *Wash. Post Co.*, 456 U.S. at 599); *see Havemann*, 537 F. App'x at 147.

When seeking to withhold information, the agency bears the burden of showing that the records fall within one of FOIA's specific exemptions to disclosure. 5 U.S.C. § 552(a)(4)(B); *Am. Mgmt. Servs., LLC*, 703 F.3d at 729; *City of Va. Beach, Va. v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1252 (4th Cir. 1993).  "The government can meet this burden by describing the withheld material with reasonable specificity and explaining how it falls under one of the enumerated exemptions."  *Hanson*, 372 F.3d at 290 (citation omitted).  No deference is owed to the agency's determination to withhold records, however.  5 U.S.C. § 552(a)(4)(B). Nevertheless, affidavits submitted by an agency are entitled to "'a presumption of good faith.'" *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (quoting *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)); *see Ray*, *supra*, 502 U.S. at 173; *Heily v. U.S. Dep't of Commerce*, 69 F. App'x 171, 173 (4th Cir. 2003); *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 544 (6th Cir. 2001).

Also relevant in this case is an SSA policy known as the "120-year rule."  As a general matter, and for obvious reasons, SSA does not release SS-5s of living individuals in response to FOIA requests.  *See Sherman v. U.S. Dept. of Army,* 244 F.3d 357, 365 (5th Cir. 2001) ("[A]n individual's informational privacy interest in his or her [social security number] is substantial.").  However, SSA does "not consider the disclosure of information about a deceased person to be a clearly unwarranted invasion of that person's privacy."  20 C.F.R. § 401.190.  Accordingly, SSA "will not disclose information about any person in [its] records . . . , except in those cases where [it has] acceptable proof of death (e.g., death certificate, obituary, newspaper article, or police report)."  Social Security Administration, Freedom of Information Act website, *available at* http:// http://socialsecurity.gov/foia/request.html#a0=0.  Proof of death is not required in one circumstance, however.  Under the 120-year rule, SSA presumes dead anyone born more than 120 years prior to the date of the FOIA request.  Thus, SSA *will* release information about the subject of a FOIA request, without proof of death, if the individual was born more than 120 years ago.  *Id.*

2.

Commissioner Colvin, defendant, has moved for summary judgment on the ground that SSA "conducted a reasonable and adequate search for responsive records of Harrison (Harry) J. Bounel, using the information provided by Plaintiff in her April 26, 2013 FOIA request."  Memo at 12.  Dr. Taitz, plaintiff, has moved for summary judgment on the same issue, contending that SSA's search was not adequate.

Defendant relies on the Second Supplemental Declaration of Dawn S. Wiggins ("Wiggins Declaration," ECF 28-6), in which Wiggins outlines the search she conducted for Mr. Bounel's SS-5. Wiggins avers, in relevant part, *id.*:

> In response to Plaintiff's April 26, 2013 FOIA request for the Form SS-5 for Harrison (Harry) J. Bounel, SSA searched its Privacy Act system of records entitled the Master File for Social Security Number Holders and SSN Applications (also known as the "Numident"), System of Records Notice No. 60-0058 (published at 75 P.R. 82121 (Dec. 29, 2010)), which includes electronic records of each person who applied for a Social Security number (SSN). There are no other locations or records that the agency determined would have a reasonable likelihood of containing a Form SS-5 for Mr. Bounel.
>
> ***
>
> In response to Plaintiff's April 26, 2013 FOIA request, SSA searched the Numident for the SSN provided by Plaintiff, which she asserts belongs to Mr. Bounel. SSA also conducted alternate searches of the Numident using Mr. Bounel's name (the following variations were searched: Harrison Bounel, Harrison J. Bounel, Harry Bounel, and Harry J. Bounel) and year of birth (i.e., 1890). Because Plaintiff did not provide a full date of birth, SSA performed a date range search for any Numident records with dates of birth between January 1, 1890 and January 1, 1894. SSA reviewed any results of the searches against the identifying information provided by Plaintiff for Mr. Bounel. However, SSA was unable to locate a Form SS-5 or Numident record for Mr. Bounel based on the information provided by Plaintiff in her FOIA request.
>
> SSA cannot conduct a search of the Numident by place of emigration, year of immigration, or the date the person received or applied for an SSN.

Without question, this Declaration satisfies FOIA's requirements; it is reasonably detailed, sets forth the types and varieties of search performed, and states that all files likely to contain responsive materials were searched. *See Ethyl Corp.*, 25 F.3d at 1246–47. Accordingly,

- 14 -

the burden shifts to plaintiff to show that the agency acted in bad faith.  *See Greenberg*, 10 F.

Supp. 2d at 13.

Plaintiff presents several arguments in support of her claim that SSA has acted in bad

faith.  First, plaintiff argues that Wiggins's representation that she was unable to find an SS-5 for

Mr. Bounel contradicts a previous letter sent by Wiggins on November 16, 2012.  That letter

("November Letter," ECF 32-1), was also sent in response to a FOIA request for information

about Harry Bounel.[4]  The addressee of the letter is not visible.  *See id.*  In the November Letter,

Wiggins wrote, *id.*:

> This letter is in response to your Internet request for a Numident for Mr.
> Harry Bounel.
>
> The Privacy Act of 1974 (5 U.S.C. § 552a) restricts disclosure of the
> information you requested.  The only exception that might permit us to disclose
> these records to you without consent would be the exception for disclosure
> required by the Freedom of Information Act (FOIA) (5 U.S.C. § 552).
>
> When we receive a request from a member of the public to release
> personal information about another individual from our records, we must balance
> the individual's privacy interest in withholding the information against the public
> interest in disclosing the information . . . There is clearly a substantial privacy
> interest . . . .  [D]isclosing records containing personal information about named
> individuals would not shed light on how the [SSA] performs its statutory duties.
> Therefore, disclosing this information would be a clearly unwarranted invasion of
> personal privacy, and the FOIA (5 U.S.C. § 552(b)(6))[5] does not require
> disclosure.

_____

[4] The FOIA request to which Wiggins responded in November of 2012 is not in the
record.

[5] As noted, 5 U.S.C. § 552(b)(6) exempts an agency from disclosing information that
would cause an unwarranted invasion of personal privacy.

According to plaintiff, the November Letter indicates that Wiggins found a record in the Numident for Mr. Bounel, but declined to release the information for privacy reasons. Thus, plaintiff continues, Wiggins's assertion in her Second Supplemental Declaration that she was "unable to locate a Form SS-5 or Numident record for Mr. Bounel" is unworthy of credence.

Defendant offers an explanation for the seeming discrepancy between the November Letter and the Second Supplemental Declaration. Defendant begins by noting that the November Letter "does not state SSA located any records for Mr. Bounel. Instead, SSA's 2012 FOIA Response generally states that SSA cannot provide information because the Privacy Act restricts disclosure of individuals' records." Def. Reply at 10–11 (internal citation omitted). Defendant then cites "a material difference in the 2012 FOIA Request and [plaintiff's] 2013 FOIA Request, which caused SSA to respond differently to the requests." *Id.* at 11. Defendant continues, *id.* (internal citations omitted):

> Namely, the 2012 FOIA Request only provided Mr. Bounel's name and an SSN, while Plaintiff's 2013 FOIA Request provided six pieces of identifying information that Plaintiff asserts are true about Mr. Bounel. SSA cannot confirm whether a particular SSN is valid because releasing information associated with an SSN could confirm the identity of the number holder and/or give the requester information that could lead to the identification or confirmation of the true number holder. . . . Any information provided to the 2012 requester would have caused to confirm or deny whether the SSN provided was valid because the requester only provided an SSN and name (i.e., the information would confirm that the name and SSN match SSA's records or that the SSN did not belong to the individual identified). Conversely, because Plaintiff provided multiple pieces of identifying information with her 2013 FOIA Request, SSA determined it could disclose to Plaintiff that no records were located for Mr. Bounel with the information Plaintiff provided. Such disclosure would not result in validation of the SSN provided by Plaintiff.

In other words, SSA has a policy regarding FOIA requests for SS-5s when the requester provides only a name and SSN: Regardless of whether SSA is withholding records under a FOIA exemption or is simply unable to locate any matching records, SSA will send the same letter to the requester, notifying him or her that disclosing the requested information would constitute an invasion of personal privacy.  SSA's policy is designed to ensure that SSA does not inadvertently reveal an individual's SSN.  Thus, according to defendant, the November Letter's mention of privacy concerns was not a confirmation that SSA had found records for Mr. Bounel.  Instead, it was wholly consistent with SSA's later representation that it did not have any such records.

At first blush, defendant's explanation leaves much to be desired.  If the SSN provided in the 2012 FOIA request did not belong to Mr. Bounel, it is difficult to see how notifying the requester of this fact "could lead to the identification or confirmation of the true number holder." Literally hundreds of millions of SSNs have been issued; it seems unlikely that SSA would jeopardize anyone's privacy by revealing that one person does not have one particular number.

However, further consideration reveals the wisdom of SSA's policy.  Imagine a FOIA request for the SS-5s of four living individuals, identified in the request only by their names and SSNs.  And, suppose that the first three pairs of names and SSNs did not yield a match, but the fourth pair did.  If SSA notified the requester that the information about the first three individuals did not produce a match, and that SSA was withholding, for privacy reasons, information about the fourth individual, it would be quite obvious that the information about the fourth individual had yielded a match.  This would essentially confirm the fourth individual's SSN, which, of

course, FOIA Exemption 6 was intended to prevent.  On the other hand, when a requester provides additional information about the individual, such as his date of birth (as plaintiff did here), SSA can confirm that it has found a match without also confirming that the SSN matched the name.  This is because of the ambiguity of what was matched; the match may have been made as to the name and/or date of the birth.

In this light, SSA's practice of declining to confirm or deny a match when a requester provides only an SSN and a name is eminently sensible, as it prevents the inadvertent confirmation of an individual's SSN.  With this understanding of SSA's Policy in mind, it is clear that the November Letter does not "admit[] to having the records for Bounel."  Opp. at 4. Therefore, the November Letter does not cast any doubt on SSA's later statement, in response to plaintiff's more detailed FOIA request, that it was unable to locate records for Mr. Bounel.

Moreover, SSA has indicated that the SSN in question does not belong to Mr. Bounel, a person who, according to plaintiff, was born in 1890 and is deceased.  As defendant notes, the "SSA has previously advised Plaintiff that SSA cannot disclose information about the SSN she asserts belongs to Mr. Bounel because the individual holding the SSN is living."  Memo at 15 n.6; *see Taitz v. Astrue*, 806 F. Supp. 2d 214, 218 (D.D.C. 2011) (holding that SSA properly withheld the SS-5 for the SSN at issue here because it was associated with a living individual and "its disclosure would compromise a substantial privacy interest"), *aff'd*, 2012 WL 1930959 (D.C. Cir. May 25, 2012).  The November Letter does not undermine the presumption of good

- 18 -

faith afforded to the Wiggins Declaration, nor does it raise any material doubt about the adequacy of SSA's search.

Dr. Taitz also argues that the FOIA and the 120-year rule both required Wiggins to "search . . . the actual original SS-5 Social Security applications," rather than searching the Numident.  Opp. at 3.  According to plaintiff, the Numident "is not reliable" and "is a computer record that can easily be changed [*i.e.* falsified]."  Plaintiff's contention is without merit, as "neither the FOIA nor SSA policy requires SSA to search paper records in response to a FOIA request for a Form SS-5."  Def. Reply at 7.

As noted, the FOIA requires agencies to conduct a search that is reasonably calculated to uncover all relevant documents.  *See, e.g.*, *Hodge v. F.B.I.*, 703 F.3d 575, 580 (D.C. Cir. 2013); *Campbell v. Soc. Sec. Admin.*, 446 F. App'x 477, 480 (3d Cir. 2011); *Ctr. for Biological Diversity v. Office of U.S. Trade Representative*, 450 F. App'x 605, 607 (9th Cir. 2011); *Rein*, *supra*, 553 F.3d at 362.  The FOIA defines "search" as "to review, *manually or by automated means*, agency records for the purpose of locating those records which are responsive to a request."  5 U.S.C. § 552(a)(3)(D) (emphasis added).  Thus, contrary to plaintiff's assertions, the FOIA explicitly *permits* agencies to conduct automated—as opposed to manual—searches of agency records.  Indeed, manually searching millions of records in response to a FOIA request would be unfathomably burdensome, especially where, as here, the requester asks SSA to conduct multiple searches using multiple pieces of information.  Therefore, so long as an

- 19 -

agency's automated search is reasonably calculated to uncover all relevant documents, the automated search satisfies the requirements of the FOIA.

Wiggins averred in her Declaration that the Numident contains "records of each person who has applied for an SSN," that it "includes older records that were submitted in hardcopy," and that the Numident "houses the identifying information given by the applicant for an SSN and Form SS-5s." Wiggins Declaration ¶ 4. Wiggins described the multiple searches she conducted in the Numident for records corresponding to Mr. Bounel and averred: "There are no other locations or records that the agency determined would have a reasonable likelihood of containing a Form SS-5 for Mr. Bounel." *Id.* ¶ 5. Wiggins's statements, which are "entitled to a presumption of good faith," *Carney*, *supra*, 19 F.3d at 812, clearly satisfy SSA's burden to show that the automated search was reasonable.

Nor does the 120-year rule require SSA to search the physical SS-5 records rather than the Numident. Plaintiff's claim appears to be based solely on an excerpt from the SSA's Chief FOIA Officer Report for 2011,"[6] which plaintiff attached as an exhibit to her Amended Complaint. *See* ECF 3 at 23. In the Report, the Chief FOIA Officer for SSA stated, *id.* at 26 (emphasis added):

> For instance, we issued new guidance for disclosing **extremely aged individuals' original Social Security Applications (SS-5)** when our records do not indicate a date of death. We developed a new policy that establishes a "120 year rule" and

---

[6] "The Attorney General directed agency Chief FOIA Officers to review all aspects of their agencies' FOIA administration and to report each year to the Department of Justice on the steps taken to improve FOIA operations and facilitate information disclosure." FOIA Guidelines, Department of Justice website, *available at* http://www.justice.gov/oip/foiapost/2013foiapost05.html.

assumes that an individual is alive unless their birth date exceeds 120 years or we have proof of the individual's death.  This new policy enabled us to release more information and potentially reduced requests on appeal.

Armed with this excerpt, plaintiff proclaims: "If SSA wanted to provide the public with the Numident, it would state so in the 120 year rule, however the rule states "**Original Social Security Applications SS-5**", not Numident."  Pl. Reply at 7 (emphasis in original).  As an initial matter, the excerpt cited by plaintiff *is not* the 120-year rule.  The excerpt is from a policy document issued by the Chief FOIA Officer; the document simply describes the steps the agency has taken to facilitate information disclosure in accordance with the rule.  The report is not binding on the agency.  *Cf. MCI Telecommunications Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218 (1994) ("The Commission's interpretation of the statute is therefore not entitled to deference, since it goes beyond the meaning that the statute can bear."); *Heckler v. Chaney*, 470 U.S. 821, 836 (1985) ("[W]e do not think the language of the agency's 'policy statement' can plausibly be read to override the . . . [agency's] rule.").  Regardless, the excerpt speaks only to whether SSA will disclose certain information, not the manner in which a search for that information must be conducted.  Accordingly, it is inapposite here.

Moreover, plaintiff's unsubstantiated assertions that the Numident is unreliable, incomplete, or "can easily be changed . . . [by] corrupt employees" do not overcome the presumption of good faith afforded to agency affidavits, nor do they raise a factual dispute about the accuracy of the Numident.  *Allen v. U.S. Secret Serv.*, 335 F. Supp. 2d 95, 99 (D.D.C. 2004), is instructive.  There, the agency submitted affidavits stating that the Secret Service's

computerized Master Central Index ("MCI") "is the most inclusive and efficient means of identifying any records" responsive to plaintiff's request.  *Id.*  As is the case here, the plaintiff questioned whether the MCI was, in fact, comprehensive and inclusive of all relevant records. The court nonetheless granted summary judgment for the agency, stating: "Quite simply, raising these questions, without a concrete showing that there are other indexes or records that should have been searched, or a demonstration of actual doubt as to whether the system is comprehensive, does not raise a reasonable doubt about the adequacy of the search."  *Id.*; *see also Judicial Watch, Inc. v. U.S. Dept. of Health and Human Services*, 27 F. Supp. 2d 240, 244 (D.D.C. 1998) ("Plaintiff's unsubstantiated suspicions . . . are insufficient to call into question the adequacy of [the agency's] search and the truthfulness of its affidavit . . . plaintiff cannot rely on mere unsubstantiated allegations of bad faith and unreasonable search procedures").  The same is true here.  Plaintiff's unsubstantiated allegations that the Numident has been altered or is not comprehensive are insufficient to raise a material dispute about the adequacy of the agency's search.

Plaintiff next argues that SSA's search of the Numident violated the "Best Evidence rule."  Pl. Reply at 7.  The Best Evidence Rule, Fed. R. Evid. 1002, is a rule of evidence that applies during a trial.  *See generally United States v. Smith*, 566 F.3d 410, 413 (4th Cir. 2009).  It has absolutely no application to the FOIA and thus offers no support for plaintiff's position.

Dr. Taitz has also submitted voluminous exhibits purporting to show that the SSN being used by President Obama, which plaintiff alleges was inadvertently disclosed on the official

White House website, is not a valid SSN.  She has also submitted exhibits purporting to show that President Obama's birth records, school records, state bar records, and immigration records have been falsified.  These exhibits, important as they may be to plaintiff's overarching theory about President Obama, are irrelevant to the narrow question presented in this particular case— whether SSA adequately responded to plaintiff's FOIA request for the SS-5 of Harry Bounel.  In other words, irregularities in President Obama's records would not support plaintiff's claim that SSA improperly withheld Mr. Bounel's SS-5 or otherwise failed to comply with the FOIA.

Finally, plaintiff argues that SSA violated the FOIA by not responding to yet another FOIA request for the SS-5 of Mr. Bounel, submitted to SSA on August 8, 2013.  *See* SAC at 7; Pl. Reply at 6.  However, the purported FOIA request of August 8, 2013, was actually an appeal of SSA's July 29, 2013 response to plaintiff's April 26, 2013 FOIA request; the request of April 26, 2013, is the subject of this action.  *See* Appeal, ECF 32-2 (titled "Appeal of the Denial of SS-5 Application for Harry Bounel, Born in 1990").  Plaintiff had already initiated litigation in this Court prior to submitting the Appeal to SSA.  Because I conclude that SSA complied with the FOIA in responding to the FOIA request of April 26, 2013, plaintiff's appeal of SSA's response is necessarily without merit.

In sum, defendant has satisfied its burden to "demonstrate that it has thoroughly searched for the requested documents where they might reasonably be found." *Krikorian*, *supra*, 984 F.2d at 468.  And, plaintiff has "made no showing of [SSA] bad faith sufficient to impugn [Wiggins's Declaration], which on its face suffices to demonstrate that [SSA's] search for responsive

- 23 -

documents was complete." *Goland*, *supra*, 607 F.2d at 355.  Accordingly, I will grant summary

judgment to defendant on the issue of the adequacy of SSA's compliance with the FOIA.  And, I

will deny plaintiff's cross-motion for summary judgment on the same issue.

3.

Plaintiff asks the Court to present to a special grand jury evidence of federal offenses

committed by President Obama "and his accomplices," or, in the alternative, permit plaintiff to

do so.  *See*  Opp. at 7–19.  In particular, plaintiff alleges that President Obama has violated 18

U.S.C. §§ 4 (misprision of felony), 1001 (fraud), 1002 (possession of false papers), 1028 (fraud),

1031 (fraud), 1341 (fraud), 1962 (RICO), 2381 (treason), 2382 (misprision of treason), 2391

(treason) and 42 U.S.C. § 1983 (deprivation of civil rights).  SAC at 16–17.  There is no merit to

this request, for the reasons set forth below.

According to plaintiff, her request is warranted pursuant to 18 U.S.C. § 3332(a), which is

part of the special grand jury statute, 18 U.S.C. § 3331 *et seq.*  Section 3332(a) provides:

> It shall be the duty of each such grand jury impaneled within any judicial
> district to inquire into offenses against the criminal laws of the United States
> alleged to have been committed within that district. Such alleged offenses may be
> brought to the attention of the grand jury by the court or by any attorney
> appearing on behalf of the United States for the presentation of evidence. Any
> such attorney receiving information concerning such an alleged offense from any
> other person shall, if requested by such other person, inform the grand jury of
> such alleged offense, the identity of such other person, and such attorney's action
> or recommendation.

The statute, 18 U.S.C. § 3332(a), does not confer a private right of action on individuals

seeking to present evidence to a special grand jury.  *See Rockefeller v. U.S. Court of Appeals*

*Office, for Tenth Circuit,* 248 F. Supp. 2d 17, 22 (D.D.C. 2003); *Hantzis v. Grantland*, 772 F.

Supp. 2d 1, 3 (D.D.C. 2009); *see also Banks v. Guffy*, Civ. No. 10-2130, 2012 WL 72724, at *7

(M.D. Pa. Jan. 10, 2012); *Arnett v. Unknown,* Civ. No. 11-5896, 2011 WL 4346329, at *5 (C.D.

Cal. Aug. 23, 2011); *Walters v. Vallani*, 2010 WL 597086, at *7 (D. Nev. Feb. 16, 2010); *Bryant*

*v. Fienberg*, Civ. No. 206-13849, 2006 WL 2924744, at *2 (E.D. Mich. Oct. 10, 2006);

*Baranoski v. U.S. Attorney Office*, Civ. No. 05-5014, 2006 WL 166495, at *3 (D. N.J. Jan. 20,

2006).

Moreover, plaintiff lacks standing to enforce § 3332(a), because she has no legally

protected interest in the prosecution of others.  The Supreme Court said in *Linda R.S. v. Richard*

*D.*, 410 U.S. 614, 619 (1973): "[I]n American jurisprudence at least, a private citizen lacks a

judicially cognizable interest in the prosecution or nonprosecution of another."  *See also Banks v.*

*Buchanan*, 336 Fed. App'x 122, 123 (3d Cir. 2009); *Sargeant v. Dixon*, 130 F.3d 1067, 1069

(D.C. Cir. 1997); *Sibley v. Obama*, 866 F. Supp. 2d 17, 22 (D.D.C. 2012) *aff'd,* Civ. No. 12-

5198, 2012 WL 6603088 (D.C. Cir. Dec. 6, 2012), *cert. denied,* ____ U.S. ____, 133 S. Ct. 1263

(2013); *Speight v. Meehan*, Civ. No. 08-3235, 2008 WL 5188784, at *3 (E.D. Pa. Dec. 9, 2008).

In order to have standing to sue in federal court, Article III of the Constitution of the

United States requires that a complainant have suffered an injury-in-fact, which the Supreme

Court has defined as the invasion of a concrete, imminent, and legally cognizable interest.  *See*

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 573 n. 8 (1992); *see also Sargeant*, 130

F.3d at 1069.  This requirement ensures that the judiciary intervenes only in actual "cases and

controversies" and that generalized, widely-shared grievances are directed to the political branches. *See* U.S. Const. art I, § 2; *see also Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule."); *see generally* Richard H. Fallon, Jr., *et al., Hart & Wechsler's The Federal Courts and the Federal System* 113–26 (6th ed. 2009). Thus, a plaintiff who alleges imminent harm to his property or liberty will generally have standing to sue; by contrast, a plaintiff who alleges a general interest in vindicating the law will not. *See, e.g., Fairchild v. Hughes*, 258 U.S. 126, 129–30 (1922) ("Plaintiff has only the right, possessed by every citizen, to require that the government be administered according to law and that public moneys be not wasted. Obviously this general right does not entitle a private citizen to institute in the federal courts a suit . . . .").

Indeed, the Supreme Court has repeatedly held that a "generalized grievance" that is common to all members of the public does not satisfy Article III's injury-in-fact requirement. For example, in *United States v. Richardson*, 418 U.S. 166 (1974), the Court held that the plaintiff lacked standing to litigate whether the Central Intelligence Agency was violating Article I, § 9, cl. 7 of the Constitution, which requires "a regular Statement and Account of the Receipts and Expenditures of all public Money." The plaintiff in that case did not allege any personalized injury; rather, he cited only his desire to "intelligently follow the actions of Congress [and] the Executive." *Richardson*, 418 U.S. at 176. The Court rejected this basis for standing, noting: "This is surely . . . a generalized grievance . . . since the impact on [plaintiff] is plainly

undifferentiated and 'common to all members of the public.'" *Id.* at 176–77 (quoting *Ex parte Levitt*, 302 U.S. 633, 634 (1937)).

The Court continued, *id.*:

> [T]he subject matter is committed to the surveillance of Congress, and ultimately to the political process.  Any other conclusion would mean that the Founding Fathers intended to set up something in the nature of an Athenian democracy or a New England town meeting to oversee the conduct of the National Government by means of lawsuits in federal courts. . . .  Slow, cumbersome, and unresponsive though the traditional electoral process may be thought at times, our system provides for changing members of the political branches when dissatisfied citizens convince a sufficient number of their fellow electors that elected representatives are delinquent in performing duties committed to them.

*See also Lujan*, 504 U.S. at 573–74 ("We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."); *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208 (1974) ("[The challenged action], standing alone, would adversely affect only the generalized interest of all citizens in constitutional governance. . . .  [S]tanding to sue may not be predicated upon an interest of th[is] kind."); *Massachusetts v. Mellon*, 262 U.S. 447, 488–89 (1923) ("The party who invokes the power [of judicial review] must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally.").

The same principles control here.  Plaintiff has lodged serious allegations against President Obama, but she has not alleged any concrete, imminent injury she has personally suffered or will suffer that differentiates her from the general public.  Nor has she requested any relief that will benefit her "more directly and tangibly . . . than it does the public at large." *Lujan*, 504 U.S. at 573–74.  As a result, plaintiff lacks standing under Article III.

Finally, even assuming that 18 U.S.C. § 3332(a) provides district courts with discretion to present evidence to a grand jury or to appoint private litigants to present evidence to a grand jury, plaintiff has not provided a basis for me to exercise that discretion.  *See Wagner v. Howard*, Civ. No. 04-5113, 2004 WL 1326601, at *1 (D.C. Cir. June 14, 2004); *Brown v. Gomez*, 19 F. App'x 513, 514 (9th Cir. 2001); *Mohwish v. Gentry*, 156 F.3d 1231 (6th Cir. 1998); *Arnett*, 2011 WL 4346329, at *6; *Phillips v. City of Oakland*, Civ. No. 07-3885, 2008 WL 1901005, at *2 (N.D. Cal. Apr. 28, 2008) *aff'd*, 311 F. App'x 14 (9th Cir. 2009); *Yancey v. Carson*, Civ. No. 04-556, 2007 WL 4443036, at *1 (E.D. Tenn. Dec. 14, 2007).  The nation is replete with capable federal prosecutors to whom plaintiff may direct her cause and concern.

### 4.

Plaintiff's "request under 28 USC 1002 for examination of the original (wet ink) SS-5 of Harry Bounel in light of evidence of forgery and fraud in other IDs" will be denied.  In the first instance, the United States Code does not contain a 28 U.S.C. § 1002.  In the event that plaintiff is attempting to state a cause of action under the Best Evidence Rule, Fed. R. Evid. 1002, no

such cause of action exists.   As discussed, the Best Evidence Rule is a rule of evidence that applies during a trial in federal court.   It does not give rise to a cause of action.

5.

Plaintiff also asks the Court to order the defendant to prepare a *Vaughn* index.   SAC at 20.   A *Vaughn* index is a list describing the documents an agency withholds in responding to a FOIA request.   *Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 357 (4th Cir. 2009); *see Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).   "The list must include sufficiently detailed information to enable a district court to rule whether the document falls within a FOIA exemption."   *Rein*, 553 F.3d at 357 n.6.

A *Vaughn* index is intended to provide a line of first defense for an agency, in recognition of "the potential damage that disclosure, even to the district court, might have on the deliberative process of an agency."   *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1249 (4th Cir. 1994) (citing *EPA v. Mink*, 410 U.S. 73 (1973)).   An agency is entitled to the "the opportunity, by means of detailed affidavits or oral testimony, to establish to the satisfaction of the District Court that the documents sought fall clearly beyond the range of material that would be available to a private party in litigation with the agency."   *Mink*, 410 U.S. at 93.   Submission of a *Vaughn* index facilitates this review.   But, the burden remains, "of course, on the agency resisting disclosure, and if it fails to meet its burden without *in camera* inspection, the District Court may order such inspection."   *Id.* (internal citation omitted).

I will deny plaintiff's request as moot. As discussed, SSA does not claim to be withholding any documents responsive to plaintiff's request pertaining to Mr. Bounel. Rather, it maintains that it has not located any responsive documents. Accordingly, there is no information for SSA to include in a *Vaughn* index.[7]

## CONCLUSION

For the foregoing reasons, I will grant defendant's motion for summary judgment and deny plaintiff's cross-motion. I will also deny plaintiff's various other requests for relief. An Order implementing this ruling follows.

Date: May 13, 2014                    _____/s/_____

                                      Ellen L. Hollander
                                      United States District Judge

---

[7] As noted, plaintiff previously filed a "Motion/Request for the Defense to Prepare Vaugn [sic] Index." ECF 14. That motion will also be denied as moot.